**In the Matter of Angelo S. SABATO.**

**No. 45S00–8610–DI–879.**

Supreme Court of Indiana.

Oct. 3, 1990.

Angelo S. Sabato, Merrillville, pro se.

David B. Hughes, Supreme Court Disciplinary Com'n, Indianapolis, for the Indiana Supreme Court Disciplinary Comm'n.

PER CURIAM.

This disciplinary proceeding is before the Court on a single count complaint charging Angelo S. Sabato, the Respondent, with professional misconduct. Specifically, it is alleged that the Respondent improperly represented multiple parties with conflicting interests in violation of Disciplinary Rules 5–105(A) and (B), engaged in conduct adversely reflecting on his fitness to practice law in violation of Disciplinary Rules 1–102(A)(4) and (6), and damaged his client during the course of representation in violation of Disciplinary Rule 7–101(A)(3) of the *Code of Professional Responsibility for Attorneys at Law.* In accordance with the provisions set forth in Admission and Discipline Rule 23, an appointed Hearing Officer conducted a hearing in this matter and has tendered his report. Neither party has petitioned for review.

Having examined the matters which have been submitted in this case and noting that neither party objects to the report of the Hearing Officer, we now adopt and accept as our own the tendered findings. Accordingly, we find that the Respondent was admitted to the Bar of this Court in 1982 and currently maintains a practice in Merrillville, Indiana. In March 1984, Respondent was employed to represent Rose M. Augustine and Anthony Rondinelli in the sale of a jointly owned office building located in Merrillville to David Fisher of Miami Beach, Florida. Prior to contacting Respondent the sellers had advertised this property in newspapers as a "no money down" deal involving commercial property with full occupancy. The parties to the transaction had already negotiated the terms of the sale.

At the request of the sellers, Respondent prepared a purchase agreement providing that David Fisher pay $185,000.00 for the real estate; the buyer was to obtain a first mortgage on the real estate in the amount of $110,000.00, and the seller was to take back a second mortgage in the amount of $75,000.00. Respondent communicated with Fisher concerning the sale, but when Fisher returned the executed purchase agreement, he did not include the required earnest money deposit and eventually the purchase agreement was abandoned.

Thereafter, the Respondent represented Augustine in various legal matters. During March and April of 1984, the Respondent represented Augustine in the formation of an Indiana for-profit corporation known as "Duneland and Associates, Inc." The only meeting of the Corporation was the organizational meeting at which time Respondent and Augustine were elected directors. On or about April 15, 1984, Augustine conveyed her one-half interest in the Merrillville property to the Duneland entity. Respondent was paid $716.50 by

Augustine for his legal services in connection with incorporating Duneland.

The Respondent also continued to represent Rondinelli. In June, 1984, Respondent represented Rondinelli in his sale and termination of two partnership interests with an individual. Later that same year, the Respondent represented Rondinelli on a personal guarantee made to a bank in Florida and a collection suit by a newspaper. A negotiated settlement was reached concerning the collection matter, and when Rondinelli failed to make payments as agreed, the Respondent negotiated a final settlement for Rondinelli in the spring of 1985.

Rondinelli contacted Respondent in July, 1984, and informed him that another buyer was found for the Merrillville property which was now owned by Rondinelli and Duneland. Thereafter, Rondinelli came to Respondent's office with Mr. Cogdell and explained that Cogdell was interested in purchasing this property for $165,000.00. At this meeting, Respondent informed Cogdell that he could only represent one party in this transaction and that Cogdell should obtain other counsel. Respondent further advised Rondinelli and Cogdell that this could not be a "no money down" deal as requested in that there was "due on sale" clause in the second mortgage which encumbered the real estate. In response to an inquiry by Rondinelli, Respondent stated the "due on sale" clause could be circumvented by Duneland and Rondinelli placing the Merrillville property in a land trust and selling the beneficial interest of said trust to Cogdell as personal property. Rondinelli and Cogdell agreed to this arrangement and instructed the Respondent to prepare an appropriate purchase agreement.

As requested, the Respondent prepared a purchase agreement for the sale of the Merrillville property by Duneland and Rondinelli, as sellers, to Cogdell, as buyer. Duneland and Rondinelli agreed to place this real property in a land trust and retain the beneficial interest. Codgell agreed to buy the beneficial interest for the sum of $157,500.00 under an installment contract providing for no money down and pay-ments for sixty months. The unpaid balance under the contract was due on the fifth anniversary of the contract. At this time, the Merrillville property was encumbered with a first mortgage held by Citizens Federal Savings and Loan Association of Gary, with an unpaid balance of approximately $44,000.00 and a second mortgage held by Mercantile National Bank of Indiana, with an unpaid balance of approximately $27,000.00. The first mortgage was payable in monthly installments of approximately $1,028.00 and the second mortgage was payable in monthly installments of $225.00 plus interest.

Prior to closing, Rondinelli inquired whether Respondent knew of anyone who would be interested in purchasing the sellers' beneficial interest in the installment sales contract to Cogdell. Respondent was aware of Rondinelli's financial difficulties and that Rondinelli needed cash. Respondent asked Rondinelli to obtain a financial statement and resume on Cogdell and the Respondent would attempt to locate a potential buyer.

As requested, Rondinelli provided the financial statement on Cogdell which showed that Cogdell had a net worth of $189,-791.00. The resume further indicated that Cogdell was very accomplished, well educated and possessed a substantial interest to shelter. After being provided with this information, Respondent attempted to find a party interested in purchasing this beneficial interest.

George and Virginia Dunfee expressed an interest in this contract. These individuals held a beneficial interest in a real estate investment trust in which the Respondent was the trustee. The only asset in this trust was approximately $23,000.00 cash derived from the sale of real estate in Arizona in which Mrs. Dunfee formerly had an interest. The Dunfees advised Respondent that they were interested in having the trust purchase the seller's interest in the Cogdell contract if the amount due under the contract was substantially discounted and secured by sellers' beneficial interest under the land trust to the Merrillville property.

The Dunfees authorized Respondent to offer Rondinelli and Duneland $129,500.00 for their beneficial interest as follows: a down payment of $23,500.00 and the balance of the purchase price secured by a promissory note in the sum of $106,750.00 with interest at the rate of 11¾% per annum; the note was to be secured by the assignment of the beneficial interest in the land trust.

All parties agreed to the proposal, and this interrelated transaction was conducted by the Respondent in his office on July 28, 1984. The Respondent did not meet with Augustine prior to this closing, but had assured her that her interest would be protected. On July 28, 1984, the following documents were executed by the parties:

(a) A trust agreement between Duneland and Rondinelli as beneficiaries, and the Respondent as Trustee, under which the Respondent took title as Trustee to the real estate and the beneficiaries retained the right to manage the property and receive the proceeds from the rent or other disposition of this property.

(b) A warranty deed conveying the interest in this real estate from Duneland and Rondinelli to Respondent as Trustee.

(c) An installment sale contract under which Duneland and Rondinelli sold their beneficial interest in this property to Codgell for $157,000.00. The terms of this agreement further provided that there would be no money down and deferred payments bearing an interest rate of 12% per annum and monthly payments of $1,619.22 commencing August 1, 1984, with a balloon payment for the remainder due on the fifth anniversary of the contract.

(d) An installment note under which Cogdell agreed to pay the deferred purchase price for the seller's beneficial interest in the land trust.

(e) An assignment under which Duneland and Rondinelli assigned their beneficial interest in the Merrillville property under this land trust to Cogdell.

(f) An assignment wherein Duneland and Rondinelli assigned to the Respondent as trustee of the Dunfee trust their seller's interest under the installment sales contract and accompanying Cogdell note, including the right to all amounts payable thereunder.

(g) An installment note under which Respondent as trustee of the Dunfee Trust promised to pay a deferred payment price for the assignment of $106,750.00 with interest at the rate of 11¾% per annum, payable in monthly installments of $1,104.86, beginning August 1, 1984, with a balloon payment for the entire balance due on the fifth anniversary of the note.

There is no evidence that the Respondent represented Cogdell at the closing. However, he did prepare two leases for Cogdell renting office space in the building for two years to Augustine's employer, South Shore Building and Mortgage, Inc., and office space in the building for three years to Rondinelli.

The net effect of the entire sales transaction was that the Respondent ended up as the Trustee of the land trust for this property and the trustee of the entity ultimately purchasing the beneficial interest of the land trust under terms of a contract. Rents and profits of the land would be paid to the trust holding the contractual interest (where Respondent was the Trustee) who in turn would pay the beneficial owners of the land trust, Augustine and Duneland (where Respondent served as a board member of the corporate entity). Furthermore, at the time the above noted documents were prepared, the Respondent represented Augustine, Rondinelli, and Duneland as sellers of the property and also represented the Dunfee Trust.

For his professional services in this transaction, the Respondent charged Duneland and Rondinelli as the sellers of their beneficial interest in the land trust and charged the Dunfee Trust for his work on its behalf. Respondent further collected at this time $300.00 from Duneland and Rondinelli in connection with their attempted sale of this real estate to David Fisher. Additionally, at closing, Respondent collected $630.00 from Duneland and Rondinelli to be paid by Respondent for an owners policy

of title insurance in favor of Cogdell, which Duneland and Rondinelli were obligated to give to Codgell under the agreement.

Respondent did not pay for a title insurance policy, and after July 28, 1984, Cogdell did not make his payments under the agreement in a timely fashion. Respondent advised Augustine that as trustee of the Dunfee Trust, the Respondent could not make payments to Duneland and Rondinelli under their note unless he first received payments from Cogdell. As a result, Duneland and Rondinelli had to make the mortgage payments even though they did not receive payments from the Dunfee trust.

The situation deteriorated further when Rondinelli became unable to make his rent payments to Codgell. Codgell reduced the rental amount from his payment to the land trust and Respondent, as trustee of the Dunfee trust, reduced his payment to Duneland and Rondinelli. In May 1985, Augustine stopped her company from paying rent, even though they continued to occupy space in the building. The Respondent made no regular monthly payments for the Dunfee trust after April 1985.

In May 1985, after discontinuing payments to the land trust, Cogdell abandoned the property and later filed a petition in bankruptcy. Thereafter the Dunfee Trust had no assets or income to pay its obligations to Duneland and Rondinelli under their note. Augustine or Rondinelli continued to make mortgage payments through January 1986, but did not have the funds to continue payments after that date. As a result, the property was foreclosed and eventually sold at sheriff's sale.

On October 19, 1985, Augustine and Rondinelli filed a lawsuit against Cogdell and the Respondent, individually and as trustee of the land trust alleging fraud and malpractice in their request for actual and punitive damages. Respondent was granted permission to intervene on behalf of the Dunfee trust and as trustee of the land trust and as trustee of the Dunfee trust, filed a counterclaim and cross-claim alleging fraud in the inducement, negligent misrepresentations, breach of contract and breach of specific performance of the leases by reason of Augustine and Rondinelli's alleged breach of obligations to Codgell.

At the time Respondent filed this counterclaim and cross-claim, he knew that he had represented the adverse parties at the time the alleged actions took place. The net effect was that he was now claiming to have been defrauded by his former clients in a transaction in which he had represented these same clients.

Upon examination of the findings in this case, we concur in the conclusions of law reached by the Hearing Officer. It is patently obvious that by representing Augustine, Rondinelli, the land trust, the Dunfees, and the Dunfee trust in connection with the interrelated transactions involved in the closing on July 28, 1984, the Respondent improperly represented multiple parties with conflicting interest in violation of Disciplinary Rules 5–105(A) and (B) of the *Code of Professional Responsibility.*

Additionally, by receiving money for such purpose and not purchasing the title insurance, Respondent engaged in dishonest conduct adversely reflecting on his fitness to practice law in violation of Disciplinary Rules 1–102(A)(4) and (6). His conduct in suing his clients further demonstrates an intentional effort to damage his clients in violation of Disciplinary Rule 7–101(A)(3) of the *Code.*

This case demonstrates the wisdom of the disciplinary proscriptions against conflicting representation. Where there are conflicting interests, each party possessing a unique stake in the outcome of a transaction deserves independent professional representation. As displayed in this case, this cannot be accomplished merely by identifying a common purpose and then working toward such objective. Each party deserves individual advice not tempered by general advice for the good of all.

In this case, the transaction was a total financial disaster. All of the individuals who relied on the advice of the Respondent were harmed, but the financial outcome of the transaction is not the test by which to measure ethical standards. It is possible that economic factors would have produced

an identical result even if all parties had independent representation. And it is possible that in a different financial atmosphere, none of the parties would have been harmed. It is not a question of damage. In order to assure faith in the legal profession, clients must have confidence that their attorney only works for them. This is the essence of the rules and this is the failure of the Respondent.

In view of the above considerations, this Court now finds that in order to preserve the integrity of the legal profession, the misconduct of the Respondent in this case warrants a period of suspension. It is, accordingly, ordered that, by reason the violations of the *Code of Professional Responsibility* found in this case, the Respondent, Angelo S. Sabato is suspended from the practice of law in this state for a period of six months beginning November 5, 1990.

Costs of this proceeding are assessed against the Respondent.